John Warren ROBINSON, and Richmond Engineering Co., Inc., Plaintiffs,

v.

Edward J. BRENNER, as Commissioner of Patents of the United States of America, Defendant.

Civ. A. No. 1031–64.

United States District Court District of Columbia.

June 18, 1965.

Munson H. Lane, Washington, D. C., for plaintiffs.

Clarence W. Moore, Sol., Washington, D. C., for defendant.

JACKSON, District Judge.

This action came on for trial February 8, 1965. Upon due consideration of the evidence, together with the briefs the Court accorded counsel an opportunity to file, the Court has found for the defendant, and against the plaintiffs, and will cause the Complaint to be dismissed.

In accordance with Rule 52(a), Federal Rules of Civil Procedure, the Court states its Findings of Fact and Conclusions of Law separately as follows:

FINDINGS OF FACT

1. Plaintiffs, John Warren Robinson as the applicant, and Richmond Engineering Co., Inc., as the assignee, brought this action under Title 35 of the United States Code, Section 145, seeking a judgment from this Court authorizing the defendant, Commissioner of Patents, to issue Letters Patent of the United States to the plaintiffs on an application for patent, Serial No. 839,108, filed September 10, 1959, entitled "Apparatus to Separate Water and Solid Matter from Liquid Hydrocarbons (Drum Type)."

2. The application in suit relates to separator apparatus for removing water and solid contaminants from liquid hydrocarbon fuels and discloses an upright cylindrical tank with a drum-type manifold within the lower portion of the tank, a fuel inlet conduit communicating with the manifold, filter cartridges extending upwardly from the top of the manifold for coalescing water and separating the water and solid contaminants from fuel flowing from the inside to the outside of the filter cartridges, and a clean fuel outlet pipe communicating with the upper portion of the tank. The manifold is spaced laterally from the side of the tank, and from the bottom of the tank, to permit passage of coalesced water into a sump at the bottom of the tank, and the top of the manifold is curved to facilitate the flow of water. The filter cartridges are conventional and comprise a glass fiber filtering and water-coalescing element with an external textile shroud which serves as a water-separating member.

3. Claim 1 is a typical claim and reads as follows:

Claim 1:

A water-fuel-filter-separator apparatus of the character described comprising an upright tank or casing, a manifold mounted within the lower portion of the tank and separated laterally from the side wall portion of the tank, filter-coalescing means comprising at least one upwardly extending filter cartridge connected to the upper portion of the manifold and communicating with the interior thereof, said cartridge including a filtering and coalescing medium designed to retain solid contaminating material and to coalesce and cause separation of water from the fuel, a fluid inlet supply conduit communicating directly with the interior of the manifold for supplying water fuel mixtures thereto, a fuel outlet communicating with the upper portion of the tank and substantially removed from the manifold for withdrawing clean fuel after passage through the filter coalescing means, and a water outlet communicating with the lower portion of said tank below the outlet of said fluid supply conduit into the manifold.

Claim 2 requires a "curved upper surface" on the manifold, claim 4 requires a plurality of filter cartridges, and claim 5 specifies an external water barrier member with the filtering and coalescing medium. Claims 2, 4 and 5 otherwise correspond with claim 1. Claim 6 adds to claim 5 a limitation that the water barrier member is in the form of a shroud. Claim 10 requires a water sump connected to the bottom of the tank. Claim 11 specifies that the manifold is supported from the bottom of the tank by the fluid supply conduit. Claim 12 calls for a fluid outlet including an upright pipe passing through the manifold and the tank bottom, and specifies that the upright pipe provides support for the manifold. Claim 13 calls for a convex upper surface on the manifold, and a water sump connected to the bottom of the tank. Claims 10 to 13 otherwise correspond with claim 1.

4. The defendant relies upon the following prior patents having the disclosures described to show that the subject matter of claims 1, 2, 4 to 6, and 10 to 13 is unpatentable:

(a) A French patent to Bataille, No. 931,881, granted November 10, 1947, which relates to apparatus for filtering liquids. It discloses an upright cylindrical tank with a number of cylindrical filtering canisters extending upwardly from the dome-like top of a receptacle within the lower portion of the tank. The liquid being filtered flows from the outside of the canisters to the inside and passes into the receptacle. The receptacle is spaced from the wall of the tank, and deposits formed on the outside of the filtering canisters may be dislodged and precipitated into the bottom of the tank beneath the receptacle for removal through a pipe by back-flowing a clean fluid from the inside of the canisters to the outside.

(b) The Marvel patent, No. 2,800,-232, granted July 23, 1957, relates to separator apparatus for removing water from liquid hydrocarbon fuels. It discloses an upright cylindrical tank provided with a deckplate across its lower end to form an inlet chamber, a fuel inlet pipe at the bottom of the inlet chamber, and filter cartridges extending upwardly from the deckplate for coalescing and separating water from fuel flowing through the cartridges from the inlet chamber to the tank. The upper portion of the tank communicates with an upright fuel outlet pipe passing through the bottom of the tank, and a drain pipe extends down.

from the deckplate through the bottom of the tank for drawing off water running down onto the deckplate from the filter cartridges. The filter cartridges consist of a water-separating textile sleeve which encloses a fiber glass water-coalescing element.

5. The prior art, as depicted by the Marvel patent, shows that it is known to construct water-fuel separators of the type having an upright tank with filter cartridges extending upwardly from an inlet chamber at the lower end of the tank.

6. The principal difference between the claimed water-fuel separator and previously known separators of the type shown by Marvel resides in the arrangement for disposing of the water after it has been separated from the fuel so as to avoid an accumulation of the water on a deckplate. The commonly used deckplate is eliminated, and a manifold spaced from the wall of the tank is substituted therefor to provide the inlet chamber previously formed by the deckplate.

7. The fact that the water is separated from the fuel by water-coalescing cartridges has no apparent bearing on the problem of disposing of the water after it has been separated from the fuel.

8. The French patent to Bataille shows a domed inner receptacle, or manifold, which is also an inlet chamber for the filter canisters. Whether or not the filter canisters are capable of separating water from fuel is not of controlling significance.

9. Bataille shows the manifold spaced from the side of the tank, and points out that foreign matter, after it has been separated from a liquid, can be disposed of by forcing a fluid through the filter canisters from the inside to the outside to dislodge and precipitate deposits of foreign matter on the outside of the filter canisters into the bottom of the tank beneath the manifold for removal through an outlet at the bottom of the tank. In view of that teaching, it would be obvious to the worker of ordinary skill in the art that by substituting a domed manifold spaced from the wall of the tank, in lieu of the inlet chamber formed by the deckplate in Marvel, he could prevent an accumulation of water on the deckplate.

10. It would have been obvious to the worker of ordinary skill in the art to make the substitution of a manifold for the inlet chamber in Marvel by connecting the fluid inlet supply conduit for the inlet chamber to the manifold, and the water discharge outlet to the bottom of the tank.

11. It would have been obvious to the worker of ordinary skill in the art to vary the shape of the upper manifold surface from dome-like to curved, as specified in claims 2 and 13, to support the manifold as specified in claims 11 and 12, and to add a sump as specified by claims 10 and 13.

12. The plaintiffs' arrangement for disposing of water after it has been separated from the fuel, as specified in claims 1, 2, 4 to 6, and 10 to 13, would have been obvious to the worker of ordinary skill in the art seeking to avoid an accumulation of water on the deckplate of the Marvel separator.

13. The evidence offered by plaintiffs at the trial does not show that the Board of Appeals was clearly in error in holding that the modification of the Marvel manifold in accordance with the teaching of Bataille would be obvious to a person skilled in the art.

14. The water-fuel separator set forth in claims 1, 2, 4 to 6, and 10 to 13, is obvious in view of the prior art.

15. Claims 1, 2, 4 to 6, and 10 to 13, are unpatentable.

## CONCLUSIONS OF LAW

1. Plaintiffs are not entitled to a patent containing any of claims 1, 2, 4 to 6, and 10 to 13.

2. The Complaint should be dismissed as to all of the claims.